We move to the second case this morning, Delgado v. Sosa v. Onfido, Inc. I represent the appellant... Hold on for one second. Hold on for one second. Do we have the other lawyers on the line? Oh, there we go. Thank you. I'm sorry. All right, you may proceed now. We have both of you on the line. Thank you. May it please the court, my name is Bonnie Delgado, and I represent the appellant, Onfido, Inc. We're here this morning on Onfido's appeal of the district court's denial of its motion to stay and compel individual arbitration. Now, Onfido is a service provider to OfferUp, and in particular, Onfido provided a TrueYou service to OfferUp that plaintiff used, and that forms the basis of plaintiff's claims under the Illinois Biometric Information Privacy Act. Ms. Delgado, can I ask you a question regarding the choice of law issue? Why should we not skip that altogether? You know, it seemed to me that in the district court, Onfido's argument was that it makes no difference whether the district court applies Washington law or Illinois law, and under either state's laws, Onfido wins under the three theories that it proposed to enforce the contract. Isn't that a problem for you now? There's a key difference between the issue of contract formation versus the issue of whether a third party can enforce a contract. But hold on for a second, that doesn't have anything to do with my question, I don't think. I'm sorry, you go ahead and answer, I see where you're going. So what we pointed out below was that with respect to the question of contract formation, in other words, was there an offer and an acceptance of a contract between plaintiff and OfferUp, namely the terms of service? With respect to that question, there wasn't a substantive difference between Illinois law and Washington law. So for the purpose of deciding whether there was a contract formed between plaintiff and OfferUp, there wasn't a need for a choice of law inquiry. But what we pointed out was that the contract formed between plaintiff and OfferUp did have a choice of law clause. And in particular, the choice of law clause specified that Washington law would apply. So the question of whether a third party can enforce the contract, that comes after the question of whether the contract has been formed in the first place. And although we argued extensively in our opening brief to the district court to explain why there was a contract formed, the terms of service between plaintiff and OfferUp, plaintiff chose not to raise any substantive dispute to that. He dropped a footnote saying he didn't concede there was a contract, but he's never, either in the district court or on appeal, actually raised any substantive challenge or addressed the argument we were made that there was a contract. Let me try to ask the question. I think I'm getting at the same thing Judge Kirsch is. You prefer, pretty clear on this I think, you want the analysis of whether you're able to benefit from the arbitration provision in the contract to proceed under the three doctrines you invoke under Washington law, correct? Yes, that's correct. Okay. And in order under just a straight up conflict of laws analysis, don't you have to show at the threshold that there were, or identify that there were outcome determinative differences in the substance of the three laws under those doctrines? That's the argument that plaintiff made in a brief footnote to the district court and that the district court adopted in its opinion. But that's the wrong standard to apply when you're looking at the question of, when you're looking at a contract that has a choice of law provision. The test that, the factors that look at whether there's an outcome determinant. Your client's not a party to the contract though. It's not a party to the contract, but our position is that whether a non-signatory can enforce a contract is a question of contract interpretation. And contract interpretation is always governed by a choice of law clause in a contract. The only way for the appropriate choice of law analysis under Illinois choice of law rules in determining whether to enforce a choice of law provision in a contract, is that those provisions are presumptively enforceable. The burden was on plaintiff if he wanted in the district court to try to challenge the validity of that choice of law clause. He would have had to show that one, either no contract existed. And as I noted before, he never, he never substantively challenged the existence of the contract between himself and OfferUp. Or two, plaintiff would have had to show that applying the choice of law clause would violate some fundamental public policy of Illinois. And that piece too is something that he never even attempted to argue in the district court or on appeal. And that is the choice of law test that applies when you have a contract with a choice of law provision. The standards that the court just mentioned and that plaintiff raised, factors that look at things like whether there's an outcome determinative difference, or the most substantial relationship between the parties, that's something, that's a test that applies when there is no contract with a choice of law provision. And the court is just looking at a particular claim or set of circumstances and trying to decide which law should apply to that claim or set of circumstances in the absence of any valid choice of law provision. What's your best authority for that proposition? All of the, plaintiff hasn't been able to identify any cases. Don't worry about the plaintiff. Don't worry about the plaintiff. Okay, what's your best authority? We cited several district court cases in our briefing where the court applied a choice of law provision in determining whether a third party could enforce a contract. We're not aware of any binding authority in the Seventh Circuit on this issue. However, we think that the fact that the third party enforcement theories should be viewed as an issue of contract interpretation and not formation is something that flows logically from the test, the third party tests themselves. If you look at what a court evaluates in deciding whether a non-signatory can enforce an agreement, the court's looking at the language of the agreement, the relationship between that language and the parties. Let me ask you a question. I understand your argument regarding contract formation versus contract enforcement. Once there's a contract that's formed, then in order to enforce the contract, you as the third party and Mr. Sosa as the plaintiff are stuck with the choice of law provision, which is Washington. But there's a caveat there, and that is that I think you can, in the state court, you bring a lawsuit in Illinois, and the Illinois courts are much better suited to apply Illinois law than they are Washington law. And whether or not the outcome determinative test comes first or whether the Illinois court would apply the choice of law provision, and there are cases that go both. I think there are cases in Illinois that say both things. We apply the choice of law provision, and there are cases that we do the outcome determinative test. But when both parties agree that there is no outcome determinative differences between Illinois and Washington law, why did the district court err in applying Illinois law? And the district court says, in this case, the parties agree that there are no outcome determinative differences between Illinois and Wisconsin law. Accordingly, we apply Illinois law. And then there are provisions in Onfito's briefs in the district court where you don't really argue that Washington law is more favorable to Onfito than Illinois law. And Washington law should apply, and you win under Washington law. But even if you don't win under Washington law, you win under Illinois law. You make the arguments that they're basically the same. Like, for instance, from your brief on the third-party beneficiary, you write, Illinois law allows a non-signatory to enforce an arbitration agreement as the third-party beneficiary under essentially the same circumstances as Washington law. So what was the district court to do here? And in the district, aren't you kind of stuck with the argument that you made in the district court that there's no outcome determinative difference? And therefore, we should just affirm the district court if we think he got Illinois law right. With respect to – so we raised three different enforcement theories. And with respect to the third-party beneficiary enforcement theory, we do agree that there's not a significant difference between Illinois and Washington law. However, there are significant differences between Illinois and Washington law with respect to both equitable estoppel and agency. And we did in the district court lay out the separate and different tests for each of those theories. And we did go through the different analysis that would apply to each of those theories in the district court. So the district court was mistaken in thinking that the parties were in agreement on the outcome determinative difference. I think the way in particular that the district court ended up applying its Illinois law analysis, some of the key points that it found under Illinois law just demonstrate that there's an outcome determinative difference between applying Illinois and Washington with respect to both equitable estoppel and agency. One example would be with respect to equitable estoppel, the district court adopted plaintiff's position that that should require some detrimental reliance. But under Washington law, detrimental reliance is not a factor that gets considered with equitable estoppel. We argue that it shouldn't be considered under Illinois law either. But regardless, the district court thought that it should be. So that would be one clear example of an outcome determinative difference between Illinois and Washington law. I guess where I'm hung up here is pointing out the differences between Illinois and Washington law, which you do, is different than arguing that there's an outcome determinative, that there's a difference in applying the law. If they have, and I can see where you argue it, there are different factors that the court considers in Washington and different factors the court considers in Illinois. And Judge, we win under either set of factors. There's no difference in the outcome, which is, I think, what you argued below. And I think that's a problem. I have to go back and look at it. But I think that could be a problem for you as opposed to there are differences between Illinois and Washington law, and we win under Washington law, which should apply. If you decide Washington law doesn't apply, we still should win under Illinois law. But there could be an outcome determinative, there could be a difference in the outcome depending upon which law applies. But are you saying that below you did argue that there should be a difference in outcome depending upon which law applies? Our position is that that would have been presented to the court in our briefing because we had explained how the standards were different. We included different analysis under the two states laws in our opening brief and in our reply brief. And so our main position is certainly that the outcome determinative difference test has no place here because we have a contract with a valid choice of block laws. So the appropriate test was for plaintiffs to have the burden to show that it would violate some fundamental public policy. That's the main argument that we're raising. However, we do think we've presented in our brief that there would be outcome determinative differences between the two laws. And that was really highlighted further by the way the district court decided its order. Unless the court has further questions now, I'd like to reserve the last couple of minutes for rebuttal. Thank you, counsel. Thank you. Mr. Purcell. Good morning, Your Honors. May it please the court. I'd like to start with the choice of law question first. And the party seeking to apply another state's law in a diversity case has the burden of establishing that the other state's law applies. And generally there are two ways it can go about doing this. One way to do it is to point to an outcome determinative difference between Illinois and the other state's law and further show that the other state has the most significant relationship to the dispute. The second way a party seeking to apply another state's law in a diversity case can do that is to point to an agreement between the parties that the other state's law applies. On fedo here has not identified any outcome determinative conflict between Illinois and Washington law. It argued here, it argues here, it argued below, that it wins under both laws. I think its briefs acknowledge that it's not really proceeding under this path. I think Ms. Delgado is acknowledging that now. Mr. Perlstadt, can I ask you a question about that? Did they argue below in the district court that the choice of law provision should apply in the first instance and the district court should apply Washington law and only if the district court found that the choice of law provision did not apply that the district court should engage in a choice of law analysis? Their choice of law argument below was not clear at all, at least to me. They pointed to the choice of law clause in the offer up terms of service, and then the rest of their brief went on to say, here's Washington law, here's Illinois law, we win under Washington law. For similar reasons, we win under Illinois law. So then in our response to that brief, we said, oh, okay, they don't point to any outcome determinative difference, so we're just going to proceed on Illinois law, and we performed the merits analysis under Illinois law. We also pointed out to the district judge that it didn't make sense to apply the choice of law clause here because it's, we described it as it's odd to ask the antecedent question of, to use a choice, to let a non-signatory use a choice of law clause to, in a contract to which they are not a signatory, to figure out whether they can enforce that contract. Well, it's not odd if you accept Ms. Delgado's argument that the choice of law clause goes to contract formation, and the issue here was contract enforcement. So there's not really a disagreement that there wasn't a valid contract between so-so and offer up. The question is whether the third party should be able to enforce the valid contract is either in agency theory or a third party beneficiary or estoppel, which, you know, there's some problems there. I mean, and that's an argument on the merits that you've made, and I think you have some strong arguments there, but if, let's say this, let's say Washington law was more favorable for Mr. Sosa on these terms, agency law or third party, third party beneficiary or equitable estoppel. Could Mr. Sosa have taken advantage of the choice of law provision if it was more restrictive in a lawsuit against Enfito? So could Mr. Sosa have said, well, actually, there's this choice of law provision in the contract with offer up, and we want to take advantage of that to demonstrate that Enfito is not a third party beneficiary of this contract between so-so and offer up? I don't think so, Your Honor. Illinois law is pretty clear that non-signatories cannot enforce choice of law clauses in contracts to which they're non-signatories. So if Mr. Sosa wanted the benefit of Washington law, he would have to do a traditional choice of law analysis. He would have to say, look, I think Illinois law is pretty bad for me, but Washington law is pretty good for me. It's potentially outcome determinative. It is outcome determinative. So I would have to, Mr. Sosa would have to point to that conflict, that actual conflict, and then he would have to do a further second restatement, most significant relationship test. Let me just make sure we're on the same page with respect to the argument. Are you referring to with respect to contract formation or with respect to contract enforcement? And the reason I ask this, are you suggesting that if there's a valid contract between two parties with a valid choice of law provision, that Illinois courts would engage in a choice of law analysis, or would you agree that they would apply the choice of law provision? I think maybe I'm not entirely clear on your hypothetical. Your hypothetical didn't—is there a third party? Is it a non-signatory trying to enforce the— No, it's a signatory trying to enforce it. Signatory trying to enforce it. Oh, sure. If Mr. Sosa had sued Offerell, then I believe the choice of law clause would probably be enforceable in that—in the signatory. So you're saying under Illinois law, you're saying under Illinois law, an Illinois court would not impose the choice of law provision on a non-signatory trying to enforce a valid contract that—well, let's just for the sake of this, let's assume this is a valid contract, okay? An Illinois court would not impose the choice of law provision as to a non-signatory. It would conduct a choice of law analysis. Is that your argument? That's my argument. It would not allow—Illinois courts would not allow a non-signatory to invoke a choice of law clause in a contract to which they're not a signatory. That's Jacobic, Merrimont, Maldonado, and water applications cases that we all cite. And Ms. DelGaubo doesn't really refute that those cases say that. The only thing she pointed to in her brief in response to that was she says that the cases in those—the non-signatories in those cases didn't posit a theory of enforceability. First of all, that's wrong. In at least one of those cases, Merrimont, the non-signatory tried to—or the court at least addressed at least briefly whether the non-signatory was a third-party beneficiary. But in any event, that argument just begs the question, which state's law applies to decide whether a non-signatory can enforce a choice of law clause? And that's got to be Illinois law. Under Claxon, the first question is what choice—what state's choice of law rules apply to answer a choice of law question? And under Claxon, the default rule is Illinois. Illinois choice of law rules. And Illinois says that non-signatories can't enforce choice of law clauses to which they are not signatories. I'll move on to the merits now. So there are these three theories under which ONFEDO asserts that it can enforce the arbitration clause now in the offer of terms of service. The first is third-party beneficiary theory. But as we point out in our briefs, there's just nothing in the offer of terms to suggest that ONFEDO is a third-party beneficiary entitled to enforce the arbitration clause. The arbitration clause clearly says it's between you and offer up only. You and offer up agree to arbitrate disputes. You and offer up agree to waive jury trial. You and offer up agree to a single arbitration. You and offer up agree that it will be confidential. And I think importantly here, it says you and offer up agree to provide notice to each other in a certain way. And as we point out, that just doesn't make any sense with respect to third-party beneficiaries. It clearly says notice of an arbitration to a user has to go to that user's email. And notice to offer up that the user would like to invoke arbitration has to go to offer up designated agent at some address by certified mail. If the arbitration clause intended third parties to be able to enforce that clause and invoke arbitration, I think it would say so. It would explain why, where, and how you're supposed to provide notice, things like that. Furthermore, the offer up terms expressly disclaim the creation of any enforceable rights in third parties. Section 7 of the Terms of Service says, quote, these terms do not create any private right of action on the part of any third party. I think it's hard to get more clear that a contract is trying not to create enforceable rights in third parties. And ONFEDO points to several other terms in the contract trying to establish that ONFEDO is an intended third-party beneficiary. As we explain in the briefs, and if you look at those sections that they cite, I just don't think they create – I don't think they even create incidental third-party rights or third-party beneficiary status. And I just – I don't think you can – and in any event, even if they did, those are not the arbitration clause. They certainly don't create a right to invoke the arbitration clause. The second argument, the second theory is detrimental reliance, but there was no detrimental reliance here. ONFEDO doesn't say what statements or conduct of Mr. Sosa it relied on. It doesn't say what action it took in reliance of any such statements or conduct. It doesn't argue that any reliance was reasonable or how it was harmed by that reliance. Instead, what ONFEDO argues is that the Illinois Supreme Court would reject the Illinois appellate court's detrimental reliance cases like Ervin and Peach and Guarantee Trust and adopt instead a federal common law test that ONFEDO tried to invoke. Two problems with that argument. First, as the district court noted, that argument was waived. It was raised only in reply, and this court has repeatedly held that district courts are entitled to find arguments raised only in reply as waived. But in any event, even if that argument were not waived, there's just no indication at all, let alone a, quote, persuasive indication that the Illinois Supreme Court would reject these cases. Illinois denied petitions for leave to appeal in Ervin and Peach and Guarantee Trust, and they've repeatedly applied equitable estoppel in other contexts invoking the detrimental reliance test. Finally, with respect to the agency argument, there are two elements of agency. The principal has to have equal— You can—I think your argument—I think the position's even a little bit stronger. After Paragon Micro, the Illinois Supreme Court's returned to detrimental reliance. Have they not? As an aspect of equitable estoppel? See, it's not a matter of guesswork, right? In Ray Scarlet, ZD? In Scarlet, Z—yes, exactly. Right, and your adversary said that's neither here nor there. It's a tort case. But I don't—that doesn't make a lot of sense to me, why tort and contract law would differ there. And I agree, Your Honor. I agree. I don't think it's a matter of guessing. Yes, the Illinois Supreme Court has clearly stated that detrimental reliance is an element of the equitable estoppel test in Illinois. And then, finally, with respect to agency, two elements of agency, principal control over the agent and the agent's ability to affect legal relationships of the principal, Onfito hasn't shown either. We asked for evidence early on and said, oh, are you an agent? You say you're an agent of Ofra. Can you show us an agreement or something, some other evidence? And they declined to show us anything. And, in fact, the Ofra terms of service disclaim control over third parties. Section 10 of the terms of service state that Ofra does not control, endorse, or adopt any third-party content, and Ofra will have no responsibility for any third-party content, content being defined explicitly as including services provided by third parties. So the contract, the Ofra terms of service expressly state we don't control any third-party service providers, which would destroy any argument that there's agency here. So unless there's any other questions, I will take my seat and simply ask that you affirm the district court's order. Thank you, counsel. Mr. Vado? Just to quickly address a few points that the plaintiff made. First, with respect to the third-party beneficiary issue, plaintiff's counsel is highlighting some language in the Ofra agreement that he asserts cut against third-party beneficiary. And I wanted to point out that even under Illinois law, if the court were to decide that Illinois law applies here, the Brown v. World Pat case that we cited in our briefing and that the district court cited below, that arbitration agreement actually contains language that's very, very close to the language in the arbitration agreement between plaintiff and Ofra, and that court did enforce on a third-party beneficiary theory. Another issue I wanted to address was that plaintiff asserted that three particular cases supported his point about third-party, whether third-party enforcement theories should consider a choice-of-law clause. And all of those cases that were just highlighted are pretty easily distinguishable in water applications. That was dealing with insurance policies, and the insurance policies did not contain a choice-of-law provision. That's what we repeatedly were seeing in the cases that that plaintiff was citing. They weren't cases where there was a valid choice-of-law provision at issue. In the Maldonado case, there had been a prior appeal that was decided under Illinois law, and so the court applied Illinois law not due to a choice-of-law analysis, but because the law of the case doctrine required it as a result of the prior appeal. And in the third case, the Mearmount case that counsel raised, there was a choice-of-law clause in a settlement agreement between an insured and a third party that the court felt just had no bearing on what law should apply to a separate coverage suit regarding another insurer. So the circumstances there, the contracts there, were just very, very different than what we had in our case. And as the last point, I just wanted to point out that neither in the district court or on appeal has plaintiff ever addressed or attempted to refute our arguments under Washington law that we met those standards. And so they waived any opposition. And if Washington law applies, then our motion to stay and compel arbitration would need to be granted on that basis. Thank you, Ms. Delgado. Thanks to both counsel and the cases taken under advice.